Attorney Grievance Commission of Maryland v. Edward Allen Malone, Misc. Docket AG No. 47, September Term, 2020

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who, among other things, knowingly and intentionally misrepresented his disciplinary history on Texas Bar application by failing to disclose his prior disciplinary history; intentionally failed to disclose his admission to various bars in attempt to conceal his disciplinary history from Texas Board of Law Examiners; knowingly and intentionally provided false affidavits under oath, swearing that all information contained in his Texas Bar applications was true and correct; and knowingly and intentionally misrepresented that disclosure failures in his Texas Bar application were result of not reading application questions carefully enough.

In addition, over period of several years, lawyer knowingly and intentionally failed to supplement Texas Bar application and re-applications with information concerning bar admissions and disciplinary history, thereby failing to correct misconception that he had fully disclosed his disciplinary history in all jurisdictions in which he was licensed; and engaged in pattern of dishonest and deceitful conduct that was prejudicial to administration of justice in applying to be admitted to Texas Bar. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(a) and (b) (Bar Admission and Disciplinary Matters), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Anne Arundel County
Case No. C-02-CV-20-002203

Argued: October 4, 2022

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 47

September Term, 2020

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

EDWARD ALLEN MALONE

_____

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

_____

Opinion by Watts, J.

_____

Filed: November 18, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This attorney discipline proceeding involves a lawyer who engaged in a continued course of dishonest and deceitful conduct to gain admission to the Bar of Texas. In Attorney Grievance Comm'n v. Malone, 477 Md. 225, 291-92, 269 A.3d 282, 321-22 (2022) ("Malone I"), we concluded that Edward Allen Malone, Respondent, "knowingly and intentionally provided false responses on his sworn Texas bar applications" when he failed to disclose information concerning his prior disciplinary history and bar admissions and "declared under oath in his affidavit that the information he provided was true and correct, thereby committing perjury under Texas law." In addition, we concluded that Malone knowingly and intentionally failed to supplement his Texas Bar application and subsequent re-applications with accurate information and thereby failed to correct the misapprehension that he had fully disclosed his disciplinary history in the jurisdictions in which he was licensed. See id. at 292, 269 A.3d at 321. We determined that, with this misconduct, Malone, a member of the Bar of Maryland, violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(a) and (b) (Bar Admission and Disciplinary Matters), 8.4(a) (Violating the MLRPC), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct that is Prejudicial to the Administration of Justice). See id. at 294, 269 A.3d at 323.[1]

Rather than imposing a sanction, we ordered a limited remand to the hearing judge to reopen the evidentiary hearing for the purposes of: (1) permitting Malone to testify

---

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered without substantive change in Title 19 of the Maryland Rules. The petition for disciplinary or remedial action charged only violations of the MLRPC.

concerning mitigating factors; (2) allowing Bar Counsel to call witnesses and introduce exhibits rebutting Malone's testimony with respect to mitigation; (3) allowing the parties to present arguments concerning mitigating and aggravating factors; and (4) allowing the hearing judge to issue supplemental findings of fact and conclusions of law as to mitigating factors and, if necessary, aggravating factors. See Malone I, 477 Md. at 293, 269 A.3d at 322. We deferred ruling on any applicable aggravating and mitigating factors and the appropriate sanction pending the outcome of the remand. See id. at 236-37, 269 A.3d at 289. The limited remand stemmed from our conclusion that regardless of his invocation of the Fifth Amendment in response to a question from Bar Counsel as to mitigation at a deposition, Malone should have been permitted to testify concerning mitigation at the disciplinary hearing. See id. at 294, 269 A.3d at 323.[2] As such, "we conclude[d] that the

_____

[2]During discovery, "Malone invoked the Fifth Amendment privilege against self-incrimination in response to two of Bar Counsel's requests for production of documents, as well as in response to every question Bar Counsel asked at Mr. Malone's deposition." Malone I, 477 Md. at 235, 269 A.3d at 288. Bar Counsel took the position that Malone invoked the Fifth Amendment improperly but did not seek to compel discovery. See id. at 235, 269 A.3d at 288. "Instead, Bar Counsel filed a motion *in limine* seeking to preclude Mr. Malone from testifying at the upcoming evidentiary hearing on the alleged MLRPC violations." Id. at 235-36, 269 A.3d at 288.

On April 26, 2021, the hearing judge conducted a hearing on the motion *in limine*. See id. at 241, 269 A.3d at 291-92. In Malone I, we summarized Malone's contentions at the hearing as follows:

> Mr. Malone argued that a litigant should be allowed to "assert the privilege pretrial" but later "change one's mind and then testify" at trial. Mr. Malone also told the hearing judge that he probably would not testify as part of his "case in chief" at the upcoming evidentiary hearing, but that, if he were found "guilty" at the hearing, he would want to "address the Court" concerning the "sentence" to be imposed.

hearing judge's order precluding [] Malone from testifying at the evidentiary hearing was in error to the extent it prevented [] Malone from testifying as to mitigating factors." Malone I, 477 Md. at 263, 269 A.3d at 304.

On March 22, 2022, on remand, the hearing judge conducted a hearing. At the hearing, Malone testified as to mitigation and offered exhibits into evidence. On May 10, 2022, the hearing judge filed supplemental findings of fact and conclusions of law, making findings as to mitigating and aggravating factors.[3]

On October 4, 2022, we heard oral argument. For the below reasons, we disbar Malone.

## BACKGROUND

### Hearing Judge's Findings of Fact and Conclusions of Law

In Malone I, 477 Md. at 248-56, 269 A.3d at 295-300, we summarized the hearing judge's findings of fact as follows:

*Background*

Mr. Malone was admitted to the Bar of Maryland and the Bar of the Commonwealth of Virginia in 1999. He has also been admitted to practice in several United States District Courts, including: the Eastern District of Virginia in 2001, the Western District of Virginia in 2005, the District of Maryland in 2003, the District of Columbia in 2003, the Central District of

---

Id. at 236, 269 A.3d at 288 (brackets omitted). The hearing judge ruled that Malone had invoked the Fifth Amendment privilege against self-incrimination in bad faith, granted Bar Counsel's motion *in limine*, and precluded Malone from testifying at the evidentiary hearing, including as to mitigating factors. See id. at 236, 263, 269 A.3d at 288, 304.

[3]On April 5, 2022, with the approval of the hearing judge and with Malone's consent, Bar Counsel filed a "Consent Motion for Extension of Time to File Findings of Fact and Conclusions of Law" in which Bar Counsel requested an extension of time from May 6, 2022, to May 13, 2022, for the hearing judge to file findings of fact and conclusions of law. On the same day, this Court granted the motion.

Illinois in 2004, the Northern District of Illinois in 2013, the Eastern District of Texas in 2015, and the Western District of Texas in 2015.

*Virginia Disciplinary History*

On February 28, 2011, the Virginia State Bar issued Mr. Malone a public reprimand for violating Virginia Rules of Professional Conduct 1.3 (diligence), 1.16(d) (declining or terminating the representation), and 8.1(c) (failure to respond to bar counsel). Mr. Malone's discipline stemmed from two client complaints. The first complaint was filed by Derrick Clayton in December 2006. After Mr. Clayton retained Mr. Malone and paid him $1,000 to represent him in a family law matter, Mr. Malone only spoke with Mr. Clayton one time about the status of the case and failed to respond to Mr. Clayton's numerous requests for information. The second complaint was filed by Keya Woods in June 2007. Ms. Woods retained Mr. Malone to represent her husband in his appeal of a criminal conviction. Although Mr. Malone timely filed a notice of appeal, he failed to timely file the trial transcripts. The court ultimately dismissed the appeal.

The Virginia State Bar served Mr. Malone with a summons and subpoena duces tecum compelling his appearance before the Fourth District Committee and demanding that he produce both client files for inspection. After Mr. Malone failed to appear, the Virginia State Bar Disciplinary Board administratively suspended him from the practice of law for his non-compliance. In or around June 2009, Mr. Malone took steps to have the suspension lifted but still failed to provide responses to the complaints.

The Fourth District Committee held a hearing to determine whether Mr. Malone's conduct violated the Rules of Professional Conduct. As noted above, Mr. Malone was issued a public reprimand. The terms of the reprimand required Mr. Malone to complete six Continuing Legal Education hours within six months of the reprimand. Mr. Malone knowingly and intentionally failed to inform Maryland Bar Counsel of his public reprimand as required under Maryland Rule 19-737(a).

Mr. Malone failed to pay the disciplinary costs in connection with his reprimand, resulting in an administrative suspension on April 28, 2011. His failure to pay annual dues for two successive years resulted in his Virginia law license being forfeited on or about March 20, 2013. By order dated May 26, 2016, the Virginia State Bar Disciplinary Board terminated Mr. Malone's 2011 suspension for non-payment of costs.

*Federal Court Disciplinary History*

On December 12, 2012, Chief Judge Deborah K. Chasanow of the United States District Court for the District of Maryland issued Mr. Malone

a private reprimand, stating:

> The Disciplinary & Admissions Committee of the Court has reviewed your response to the Court's Order to Show Cause dated November 7, 2012. By Order entered on September 26, 2012, you were found in contempt by Bankruptcy Court Judge James F. Schneider in the case [ ] *In re T.D. Bistro, Inc.*, Case No. 11-19367 JS, for failure to appear in a court proceeding without proper justification. Your response at the contempt hearing and to this Court's show cause order was to claim financial hardship.
>
> The Disciplinary and Admissions Committee has found your explanation unacceptable. As an out-of-state attorney, you should not undertake representation of a client in this State if you are not prepared to appear at local proceedings.
>
> The Court therefore, at the recommendation of the Disciplinary and Admissions Committee, hereby issues a private reprimand to you based on your conduct. Despite the informal nature of this letter, it shall be treated as an order of this Court closing this case.

Mr. Malone knowingly and intentionally failed to inform Bar Counsel of this private reprimand as required by Maryland Rule 19-737(a).

### *Texas Bar Application and Admission*

On June 5, 2013, Mr. Malone filed an Application for Admission without Examination to the Texas Bar with the Texas Board [of Law Examiners ("the Texas Board")]. Question 3 of the application required Mr. Malone to "[l]ist all state, federal, and/or foreign jurisdictions where you have been licensed or admitted to practice law." Mr. Malone disclosed his admission to the Maryland Bar. Mr. Malone knowingly and intentionally failed to disclose his admission to the Virginia State Bar, the United States District Court for the District of Maryland, and various other federal district courts. The hearing judge found that, at or around the time Mr. Malone applied for admission to the Texas Bar in June 2013, he was actively representing clients before various federal district courts. Between May 2011 and February 2013, Mr. Malone represented a client before the United States Bankruptcy Court in the District of Maryland. This was the case in which Mr. Malone was held in contempt and that led to the issuance of the private reprimand in December 2012. In addition, between February 2013

- 5 -

and September 2013, Mr. Malone represented a client in a separate matter before the United States District Court for the District of Maryland. Between June 2013 and June 2014, Mr. Malone represented a client before the United States District Court for the Northern District of Illinois.

Question 13 of the application asked, "[h]ave you ever been held in contempt or sanctioned by a court?" Mr. Malone answered "no." Mr. Malone knowingly and intentionally misrepresented his disciplinary history by failing to disclose that he had been held in contempt by the United States Bankruptcy Court in the District of Maryland and sanctioned by the United States District Court for the District of Maryland.

Question 17(c) of the application asked, in relevant part, "[h]ave you ever been ... suspended from practice, disciplined, disqualified ... or has your license ever been qualified or conditioned in any way ...?" Mr. Malone answered "no." Mr. Malone knowingly and intentionally misrepresented his disciplinary and licensing history by failing to disclose the Virginia discipline and administrative suspensions and the reprimand issued by the United States District Court for the District of Maryland.

The application included an affidavit, signed by Mr. Malone on June 3, 2013, swearing that he "responded to all inquiries on [the application] fully and frankly, and all the information contained in [the] application ... is true and correct." Mr. Malone's affidavit was knowingly and intentionally false.

To qualify for admission without examination, Mr. Malone was required to submit his federal tax returns from 2006-2012. He failed to do so, asserting that his tax returns were "none of the Board's business." Rather than submit the required documentation, on November 18, 2013, Mr. Malone elected to apply for admission to the Texas Bar by taking the February 2014 Texas Bar Examination. Mr. Malone took the exam but did not pass.

On May 9, 2014, Mr. Malone filed a sworn Re-Application for Admission to the Bar of Texas. Again, Mr. Malone failed to disclose his admission to the Virginia Bar or the various United States District Courts, including the District of Maryland, and failed to disclose his disciplinary history. Rule X(e) of the Rules Governing Admission to the Bar of Texas states, in part, that "[t]he Applicant has a continuing duty to ensure the accuracy and completeness of the Applicant's responses on the Application and to update those responses until the Applicant is certified to the Supreme Court for licensure."

On December 5, 2014, Mr. Malone filed a second sworn Re-Application for Admission to the Bar of Texas. Again, Mr. Malone failed to disclose his admission to the Virginia Bar or the various United States District Courts, and failed to disclose his disciplinary history.

Mr. Malone again took the Texas Bar Exam in July 2014 but did not pass. Mr. Malone passed the February 2015 Texas Bar Exam and was admitted to the Texas Bar on April 30, 2015.

On February 10, 2016, the Texas Board opened an investigation after receiving notice of Mr. Malone's disciplinary history in Virginia from the District Attorney of Sabine and San Augustine Counties, Texas. On February 10, 2016, the Texas Board advised Mr. Malone that it was investigating whether he obtained his Texas law license fraudulently or by a willful failure to comply with the Rules Governing Admission to the Bar of Texas. Rule XVII(b) provides:

> All law licenses are issued on the condition that the Applicant has faithfully complied with these Rules. If at any time it appears that an Applicant has obtained a license fraudulently or by willful failure to comply with these Rules, after notice and hearing, the Board may recommend to the Supreme Court that the license be withdrawn and canceled, and the name of the license holder stricken from the roll of attorneys.

The Texas Board asked Mr. Malone to explain why he failed to disclose his Virginia licensure and disciplinary history. Mr. Malone responded by letter dated February 25, 2016, as follows:

> I failed to disclose my Virginia license and discipline to the board because I did not read the questions carefully enough. In applying for a Texas law license under the admission by motion program, I planned on using Maryland as the reciprocal state. As such, I did not believe I was required to share my experience practicing law in Virginia.

This statement by Mr. Malone to the Board was a knowing and intentional misrepresentation.

On May 13, 2016, Mr. Malone appeared before the Texas Board for a hearing and admitted that his statements to the Board in his February letter were false. He admitted to carefully reading the application questions, that he knew of his requirement to disclose his Virginia license and disciplinary history, and that he intentionally answered questions 3 and 17(c) falsely.

By Order and Opinion dated May 24, 2016, the Texas Board concluded that Mr. Malone obtained "his license to practice law in Texas fraudulently or by willful failure to comply with the Rules." The Texas Board found that Mr. Malone's knowing and intentional misrepresentations on his bar applications "were material, were relied upon by the Board, and benefitted Mr. Malone in that he was licensed to practice law in Texas without any opportunity for the Board to make an informed determination regarding Mr. Malone's moral character." The Texas Board further found a "clear and rational connection" between Mr. Malone fraudulently obtaining

- 7 -

his Texas law license and "the likelihood he would injure a client, obstruct the administration of justice, or violate the *Texas Disciplinary Rules of Professional Conduct*." The Texas Board recommended to the Supreme Court of Texas that Mr. Malone's license be withdrawn and canceled.

The Supreme Court of Texas withdrew and canceled Mr. Malone's Texas law license by Order dated June 7, 2016. The Order required Mr. Malone to immediately notify his Texas clients and all Texas tribunals in which he had a pending matter of the Order and submit an affidavit stating he had done so. In response to the Supreme Court's Order, Mr. Malone submitted an affidavit asserting that "[the Supreme] Court has no authority to compel me to do a thing... Requiring me to submit memos to judges and then file an affidavit with this Court constitutes involuntary servitude."

On June 15, 2016, Mr. Malone filed a Re-Application for Admission to the Texas Bar. He answered affirmatively to the question whether he has been charged with fraud, or alleged to have committed fraud, in a legal proceeding. Mr. Malone stated: "My misrepresentation only became an issue when a District Attorney ... came forward and complained to the Board after I begin to expose and challenge his unconstitutional practices." The Texas Board granted Mr. Malone's request that he not be required to retake the Texas bar exam.

During Mr. Malone's character and fitness investigation, the Texas Board asked him to provide a complete list of all federal jurisdictions in which he was licensed. Based on that list, the Board sent inquiries to multiple jurisdictions. The Board was advised by the United States District Court for the District of Maryland that Mr. Malone had been issued a private reprimand on December 12, 2012. As of 2016, Mr. Malone had failed to disclose this private reprimand to the Board. Following the character and fitness investigation, the Board notified Mr. Malone that a hearing would be held to determine whether

> Mr. Malone's incomplete and false disclosures in connection with multiple applications for admission to the Bar of Texas indicates he lacks the good moral character required for admission; whether Mr. Malone's Virginia State Bar disciplinary history indicates he lacks the good moral character required for admission; whether Mr. Malone's history of obtaining his Texas law license by fraud or willful failure to comply with the Rules Governing Admission to the Bar of Texas and the subsequent cancellation of that license indicates he lacks the good moral character required for admission; and whether Mr. Malone's correspondence with the Supreme Court of Texas and the Board of Law Examiners indicates he lacks trustworthiness in carrying out responsibilities directly related

- 8 -

to the judicial process.

At the July 7, 2017 hearing before the Board, Mr. Malone testified that he failed to disclose his admission and disciplinary history in the United States District Court for the District of Maryland because he did not "remember" he was admitted to that court. The Board found Mr. Malone's testimony not credible, noting that Mr. Malone was disciplined in the United States District Court for the District of Maryland in December 2012 and applied for admission to the Texas Bar only six months later in June 2013. The Board further found that Mr. Malone's "failure to provide credible testimony or a legitimate explanation regarding the reason for his failure to disclose his disciplinary history with the United States District Court for the District of Maryland, is indicative of dishonesty and a lack of trustworthiness."

By Order dated July 21, 2017, the Board concluded that Mr. Malone did not possess the present good moral character required for admission to practice law in Texas. The Order required, among other things, that Mr. Malone provide copies of the Order to any jurisdiction in which he is admitted to practice law.

On August 17, 2017, Mr. Malone filed a Petition for Review in the District Court for Travis County, Texas, requesting the court to review and overturn the Board's decision denying him admission to the Texas Bar. In the Petition, Mr. Malone alleged that the Board denied him admission "because it wanted to punish him for 'pulling one over' on them and failing to be humble in re-applying for a license." He also accused the Board of acting out of spite and trying to destroy him. In April 2020, Mr. Malone filed a Notice of Nonsuit in the District Court for Travis County, asking the court to dismiss his claims against the Board. On April 22, 2020, the Travis County District Court dismissed Mr. Malone's claims against the Board.

Mr. Malone reapplied for admission in Texas. At the time of the evidentiary hearing, his application was pending satisfaction of the requirement of present good moral character and fitness for admission to the Texas Bar.

(Footnotes omitted) (ellipses and most alterations in original).[4] Based on these findings of

---

[4]In <u>Malone I</u>, 477 Md. at 290 n.24, 269 A.3d at 321 n.24, we explained that Malone excepted to two of the hearing judge's findings of fact:

First, Mr. Malone t[ook] issue with the hearing judge's finding that Mr. Malone decided in 2013 to convert his Texas application to general

fact, the hearing judge concluded by clear and convincing evidence that Malone violated MLRPC 8.1(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).  See Malone I, 477 Md. at 256, 269 A.3d at 300.[5]

## Malone I

In Malone I, 477 Md. at 290, 269 A.3d at 320-21, we determined that the hearing judge correctly concluded that Malone violated MLRPC 8.1(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d).  We explained:

> We agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.1(a) when he answered "no" to Questions 13 and 17(c) on his Texas Bar application.  The hearing judge concluded that, in so doing,

_____

admission by examination because he believed that his tax returns were "none of the Board's business."  Mr. Malone state[d] that he "in fact told the Texas Board that he decided to take the Texas law exam in order to learn Texas law" and that the hearing judge "took a 2017 statement by Respondent that his tax returns were 'none of the board's business' out of context."  Second, Mr. Malone contend[ed] that the hearing judge erred in finding that Mr. Malone told the Texas Board that he did not "remember" being admitted to the United States District Court for the District of Maryland, when in fact, he testified before the Board that it was the federal district court's private reprimand that he did not remember.

We "assume[d] for present purposes that Mr. Malone's exceptions to these two factual findings [we]re well taken[,]" but stated that "sustaining these exceptions [did] not materially affect the analysis [of] whether Mr. Malone violated the MLRPC, as alleged by Bar Counsel."  Id. at 290 n.24, 269 A.3d at 321 n.24.

[5]The hearing judge originally found "five aggravating factors: (1) prior disciplinary offenses; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) bad faith obstruction of the disciplinary proceeding; and (5) substantial experience in the practice of law[,]" and concluded that Malone had failed to prove any mitigating factors by a preponderance of the evidence.  Malone I, 477 Md. at 260-61, 269 A.3d at 303.  In addition to excepting to the hearing judge's ruling concerning the invocation of his Fifth Amendment privilege against self-incrimination, Malone excepted to what he described as the hearing judge's "fail[ure] to undertake an analysis of mitigating factors[,] [] fail[ure] to recognize the existence of various mitigating factors[,] and [] fail[ure] to properly analyze the existence of aggravating factors."  Id. at 262, 269 A.3d at 303-04 (cleaned up).

- 10 -

Mr. Malone knowingly and intentionally misrepresented his disciplinary history by failing to disclose that he had been held in contempt by the bankruptcy court, sanctioned by the United States District Court for the District of Maryland, and reprimanded and administratively suspended in Virginia. The hearing judge also concluded that Mr. Malone violated Rule 8.1(a) by intentionally failing to disclose his admissions to the Virginia Bar and various United States District Courts to conceal his disciplinary history from the Texas Board. In addition, the hearing judge concluded, Mr. Malone's affidavit swearing that he "responded to all inquiries on [the application] fully and frankly, and [that] all the information contained in [the] application is true and correct," was also knowingly and intentionally false. The hearing judge further found that, during the Board's subsequent investigation of Mr. Malone, he continued to make misrepresentations, falsely stating that his disclosure failures were the result of not reading the bar applications questions carefully enough. Based on the record before the hearing judge, we determine that the hearing judge's conclusions regarding Rule 8.1(a) are supported by clear and convincing evidence.

The hearing judge concluded that Mr. Malone violated Rule 8.1(b) when he knowingly and intentionally failed to supplement his June 2013 bar application and subsequent re-applications with his admissions and disciplinary history, thereby failing to correct the misapprehension that he had fully disclosed his disciplinary history in all licensed jurisdictions. The hearing judge further found that Mr. Malone failed to provide the Board with a list of all federal jurisdictions in which he was licensed until September 2016, when the Board explicitly asked for such information during his character and fitness investigation of his reapplication after his Texas license was canceled. We agree with the hearing judge that this conduct violated Rule 8.1(b).

\* \* \*

The hearing judge correctly concluded that Mr. Malone violated Rule 8.4(a) by violating other Rules of Professional Conduct.

We also agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.4(b) when he knowingly and intentionally provided false responses on his sworn Texas bar applications and when he declared under oath in his affidavit that the information he provided was true and correct, thereby committing perjury under Texas law. By definition, this conduct also constituted a violation of Rule 8.4(c), which prohibits attorneys from engaging in intentional acts of dishonesty.

We also agree with the hearing judge's conclusion that Mr. Malone violated Rule 8.4(d). His pattern of dishonest and deceitful conduct in his efforts to be admitted to the Bar in Texas reflects negatively on the public's

perception of the legal profession.

Id. at 291-92, 269 A.3d at 321-22 (footnote omitted) (alterations in original).

As discussed above, we remanded the case to the hearing judge for further proceedings and the issuance of a supplemental opinion with findings of fact and conclusions of law concerning mitigating factors and, if warranted, revision of the prior findings of fact and conclusions of law concerning aggravating factors. See id. at 293, 269 A.3d at 322-23.

**Hearing Judge's Supplemental Findings of Fact and Conclusions of Law**

Below is a summary of the hearing judge's supplemental findings of fact and conclusions of law with respect to mitigating and aggravating factors.

*Mitigating Factors*

In the supplemental findings of fact and conclusions of law, the hearing judge began by observing that he had "heard and considered" Malone's testimony and found "him credible on certain topics and not credible on others." The hearing judge noted that he had considered Malone's "overall demeanor, difficulty in acknowledging the wrongful nature of his conduct, and propensity to blame others for his conduct." The hearing judge stated that although Malone had taken numerous continuing legal education classes on ethics through the Virginia Bar, he (the hearing judge) "was left with the impression that [Malone] has a fundamental misunderstanding of legal ethics in general, and in particular, why it is fundamentally important that attorneys be genuine and honest." According to the hearing judge, "[a]n example of this fundamental disconnect" could be found in Malone's seeming inability to understand that "it was wrong to note his association with a Texas traffic court

- 12 -

case as 'pro hac' at a time when he was neither licensed, nor permitted, *pro hac vice*, to practice law in Texas."

The hearing judge rejected Malone's contention that he had taken responsibility for his misconduct and rehabilitated himself, finding that such assertions were undermined by Malone's "apparent inability to understand why some of his actions are wrong." The hearing judge explained that, "[b]eginning in or around June 2016, [Malone] continued to perpetrate falsehoods[,]" and that on July 7, 2017, at a character and fitness hearing of the Texas Board, Malone falsely testified that he failed to disclose his admission and disciplinary history in the United States District Court for the District of Maryland because he did not recall that he was admitted to that particular court. The hearing judge concluded that Malone's testimony before the Texas Board was not credible, explaining that Malone had been disciplined in the District Court of Maryland in December 2012, only six months before he applied to the Texas Bar in June 2013, and that Malone represented a client in the District Court at the time that he applied to the Texas Bar in June 2013.

The hearing judge pointed out that, in an order dated July 21, 2017, the Texas Board concluded that Malone did not possess the good moral character required for admission to the Texas Bar. The hearing judge explained that instead of accepting responsibility for his misconduct in the application process, Malone filed a petition for review in a Texas trial court, stating that the Texas Board had denied him admission "because it wanted to punish him for 'pulling one over' on them and failing to be humble in re-applying for a license[.]" The hearing judge noted that Malone accused the Texas Board "of acting out of spite and trying to destroy" him and "lying and behaving arrogantly."

The hearing judge explained that although Malone stipulated to the factual findings in Virginia's revocation opinion concerning his representation of a client in a Texas court after the Texas Board had rescinded his law license, he "failed and refused to acknowledge that his conduct constituted the unauthorized practice of law." (Citations omitted). Instead, on remand before the hearing judge, Malone testified that the Texas court "had mistreated and wronged him because they reported him and got him in trouble." (Cleaned up).

After recounting all of the above, the hearing judge found that Malone had demonstrated by a preponderance of the evidence mitigation in the form of his church and volunteer work. The hearing judge explained that Malone is involved with at least two churches and provides "practical advice on an informal basis to churches wishing to do such things as renew their charters or articles of incorporation." According to the hearing judge, Malone's legal training and involvement with the churches allow him to provide such services on a limited basis and any concerns about Malone practicing law without a license were "allayed by" Malone's "credible testimony that his work was limited in scope to practical matters supplementing the work of others who were licensed to provide legal services in those jurisdictions." The hearing judge also found that Malone has been very involved in other non-legal volunteer activities that benefit his community. In addition, the hearing judge found that Malone "has demonstrated remorse to the degree to which he understands his ethical shortcomings."

### Aggravating Factors

The hearing judge found the existence of the same five aggravating factors for the same reasons given in the original opinion: (1) prior disciplinary offenses; (2) a dishonest

or selfish motive; (3) a pattern of misconduct; (4) bad faith obstruction of the disciplinary proceeding; and (5) substantial experience in the practice of law.[6]

With respect to the first factor, the hearing judge found that on February 11, 2012, the Virginia State Bar publicly reprimanded Malone and, on December 12, 2012, the United States District Court for the District of Maryland privately reprimanded him.

Regarding the second and third factors, the hearing judge found that Malone had "demonstrated a dishonest and selfish motive and committed a pattern of misconduct in his years long pursuit for admission to the Texas Bar, engaging in a sustained course of dishonesty and deceit."

As to the fourth factor, the hearing judge explained that Malone had engaged in bad faith obstruction of the disciplinary proceeding. The hearing judge stated that, on March 2, 2021, Bar Counsel served Malone with a notice of deposition, and two days later, on March 4, 2021, Malone filed a motion for a protective order and to quash the notice of deposition, arguing, in part, that the deposition would violate his Fifth Amendment right against self-incrimination. On March 9, 2021, the hearing judge denied Malone's motion. On March 29, 2021, Malone appeared remotely for the deposition but did not answer any questions,[7] instead invoking his Fifth Amendment privilege against self-incrimination in

---

[6]In both the original and supplemental findings of fact and conclusions of law, the hearing judge's discussion of the reasons for finding each factor appeared to overlap among the factors.

[7]After responding in the affirmative when asked whether it was his intention to assert the Fifth Amendment privilege to any and all questions, Malone invoked the Fifth Amendment in response to all other questions. See Malone I, 477 Md. at 240-41, 269 A.3d at 291.

response to each question asked, including questions asking him to spell his name for the record, whether he had received documents emailed to him by Bar Counsel prior to deposition, and whether he was able to see what Bar Counsel was sharing on the screen. On April 1, 2021, Bar Counsel filed a motion *in limine* requesting that Malone be precluded from testifying at the evidentiary hearing and, after a hearing on April 26, 2021, the hearing judge granted the motion, ruling that Malone had invoked the Fifth Amendment privilege against self-incrimination in bad faith. As such, Malone was precluded from testifying at the evidentiary hearing.

With respect to the fifth factor, the hearing judge found that Malone's misconduct was aggravated by substantial experience in the practice of law, as he was admitted to the Bar of Maryland in 1999.

## STANDARD OF REVIEW

In an attorney discipline proceeding, we review for clear error a hearing judge's findings of fact and review without deference a hearing judge's conclusions of law. See Md. R. 19-740(b)(1) and (b)(2)(B); Attorney Grievance Comm'n v. Slate, 457 Md. 610, 626, 180 A.3d 134, 144 (2018). We determine whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c).

## DISCUSSION

### (A) Exceptions

#### *1. Mitigating Factors*

Malone excepts to the hearing judge's failure to find particular alleged mitigating factors. We overrule all of the exceptions.

- 16 -

***Timely good faith efforts to make restitution or to rectify consequences of the
misconduct***

Malone excepts to the hearing judge's failure to find the mitigating factor of timely good faith efforts to make restitution or to rectify consequences of the misconduct. Malone contends that, in failing to find that he made good faith efforts to make restitution for his actions in Texas, the hearing judge overlooked the circumstance that he had been ordered to return only unearned fees to clients and that at the hearing on remand, he testified that he not only returned unearned fees but also provided full refunds to clients because he was remorseful. Malone alleges that his testimony demonstrated his efforts to make restitution and rectify the consequences of his misconduct and showed that he accepted responsibility for his actions.

We overrule Malone's exception to the lack of a finding of the mitigating factor of timely good faith efforts to make restitution or to rectify the consequences of the misconduct. To be sure, at the remand hearing, Malone testified that, while he was licensed to practice law in Texas from 2015 to June of 2016, he represented three clients who paid to retain his services and that he refunded their money. Malone testified about his reasons for refunding the money, stating: "The Texas Supreme Court told me to give back all unearned funds, all unearned fees. I felt ashamed that I let the clients down. I wanted to give them back enough so that they can hire somebody else, so I issued full refunds." Malone also testified that, even though he was not required to give the clients full refunds, he did so because he "couldn't take them to the finish line and [he] felt bad[,]" "[t]hat [he] was wrong[,]" and that he thought it was the right thing to do because if the client did not

- 17 -

get anything from him, the client "should receive a refund so they can hire another attorney."

We have explained on more than one occasion that "we afford a great deal of deference to the hearing judge's credibility determinations[,]" and that "[t]he underlying justification for our deference to the hearing judge's credibility determinations is based on the premise that the hearing judge is in the best position to assess the credibility of witnesses[.]" Attorney Grievance Comm'n v. Miller, 467 Md. 176, 195, 223 A.3d 976, 987 (2020) (cleaned up). See also Attorney Grievance Comm'n v. Tanko, 408 Md. 404, 420, 969 A.2d 1010, 1020 (2009) ("Undoubtedly, the hearing judge had the best opportunity to evaluate the veracity of the respondent's explanation concerning his" alleged violation of the MLRPC.). In addition, we have stated that, "[g]enerally, a hearing judge maintains a great deal of discretion in determining which evidence to rely upon[,]" and, in making "findings of fact, the hearing judge is permitted to pick and choose which evidence to rely upon from the conflicting array of facts presented." Miller, 467 Md. at 195, 223 A.3d at 987 (cleaned up). In addition, Maryland Rule 19-740(b)(2)(B) instructs that we "give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

In this case, at the outset of the supplemental findings of fact and conclusions of law, the hearing judge explained that he found Malone "credible on certain topics and not credible on others." In other words, the hearing judge stated that he found some of Malone's testimony not credible. It is apparent that the hearing judge found Malone's testimony as to providing refunds to clients and the reasons for the refunds not credible.

- 18 -

Given the nature of the testimony, the hearing judge may have been unable to ascertain that the amount of any unearned fees would have been less than a full refund, and in the event that the hearing judge was satisfied that a full refund would have exceeded the amount of unearned fees, the hearing judge was not required to credit Malone's testimony as to either giving full refunds or the reasons for doing so. The only exhibit that Malone referred to during this testimony was Exhibit D, which Malone testified was "a list of client[s] in Texas that [he] had to disengage with after Texas withdrew [his] law license." Exhibit D is an untitled four-line document (that appears to have been typed by Malone or his counsel) listing four clients, three by name, with the word "refunded" and an amount for each client—$3,500, $750, $1,000, and $1,000. The hearing judge was in the best position to assess the veracity of Malone's testimony as to the matter, and we accord deference to the hearing judge's determination.

### *Cooperative attitude during the proceedings*

For three reasons, Malone excepts to the hearing judge's failure to find the mitigating factor of a cooperative attitude during the proceedings. First, according to Malone, the hearing judge ignored that he self-reported matters that led to the filing of the petition for disciplinary or remedial action. Second, Malone contends that the hearing judge ignored that, in <u>Malone I</u>, this Court noted that he had cooperated during the investigation and discovery process. Third, Malone argues that the record in this case demonstrates that he had a cooperative attitude during the proceedings—namely, he responded to the petition for disciplinary or remedial action and Bar Counsel's discovery requests, he sat for a deposition, and he appeared for and took part in the evidentiary

- 19 -

hearing—all of which, according to Malone, shows that he was cooperative.

We overrule Malone's exception to the hearing judge not finding the mitigating factor of a cooperative attitude toward the attorney discipline proceeding. As with the mitigating factor of timely good faith efforts to make restitution or to rectify the consequences of the misconduct, this mitigating factor—having a cooperative attitude—is one that is based on the attorney's behavior, demeanor, and, in part, credibility. In this case, we decline to disturb the hearing judge's non-finding of the mitigating factor.

In the supplemental findings of fact and conclusions of law, at the beginning of the section titled "Mitigating Factors," the hearing judge accurately identified the list of mitigating factors that this Court considers in determining an appropriate sanction. The hearing judge's list included the factor of "full and free disclosure to disciplinary board and cooperative attitude toward proceedings." As such, the hearing judge's opinion demonstrates that, as with other potentially applicable mitigating factors, the judge was aware of this factor and declined to find it.

That Malone may have self-reported his misconduct to the Maryland Bar (and other jurisdictions), thus, according to him, beginning the disciplinary proceeding and leading to an investigation, is not dispositive of whether he had a cooperative attitude toward the attorney discipline proceeding. Pursuant to Maryland Rule 19-737(a), an attorney who is disbarred, suspended, or otherwise disciplined in another jurisdiction is required to promptly inform Bar Counsel of the discipline. That Malone self-reported means that he fulfilled the duty imposed upon all attorneys in Maryland to comply with the Rule on self-reporting and does not necessarily demonstrate that the mitigating factor of a cooperative

attitude toward the disciplinary proceedings is established.

To the extent that Malone relies on language from this Court's opinion in Malone I and contends that the opinion and record demonstrate that the factor of a cooperative attitude toward the disciplinary proceedings exists, we disagree. In Malone I, we did not make a determination with respect to any mitigating factors, as the hearing judge initially found none, and the purpose of the remand was to provide Malone with the chance to offer evidence as to mitigation.

In bringing the instant exception, Malone appears to rely on our discussion in Malone I of Bar Counsel's explanation for the failure to file a motion to compel discovery before seeking to exclude Malone's testimony at the disciplinary hearing based on his assertion of the Fifth Amendment privilege at a deposition. In Malone I, 477 Md. at 272, 269 A.3d at 309, we stated that, "to the extent Bar Counsel contend[ed] that [] Malone was totally uncooperative in the discovery process and that this uncooperativeness justified foregoing a motion to compel, Bar Counsel proceed[ed] on a flawed premise." We explained that although Malone had failed to answer any questions at his deposition, he had responded to seven of Bar Counsel's nine requests for production of documents without invoking the privilege against self-incrimination and that the assertion of the Fifth Amendment privilege in blanket fashion at the deposition did not equal a failure to appear at the deposition, such that the discovering party could move for sanctions under Maryland Rule 2-432(a) without having obtained an order to compel. See id. at 271-72, 269 A.3d at 309-10.

In Malone I, we did not determine that the mitigating factor of cooperative attitude

had been established or otherwise indicate that on remand the hearing judge was to find the factor. Rather, we explained that Malone had responded, in part, to Bar Counsel's request for production of documents and appeared for the deposition and that, as a result, the imposition of immediate sanctions under Maryland Rule 2-432(a) was not permitted. See id. at 271-72, 269 A.3d at 309-10. Insofar as Malone's argument that the mitigating factor of a cooperative attitude applies because of language in this Court's opinion in Malone I is concerned, he has taken our discussion out of context.

As to Malone's contention that his participation in discovery and the evidentiary hearing shows that the mitigating factor of cooperation is applicable, again the conduct that Malone relies on is conduct that is expected of any respondent in a disciplinary matter and will not necessarily warrant a determination that the mitigating factor of a cooperative attitude applies—especially where the hearing judge has found just the opposite by finding the aggravating factor of bad faith obstruction of the disciplinary process (which we address below).

### *Self-reporting to other jurisdictions*

Further, Malone excepts to the hearing judge's failure to find as mitigation that he self-reported his conduct to other courts, which he testified he did so that his record would be "out in the open" and to show that he "express[ed] remorse" for his actions. Malone also contends that, in addition to self-reporting, he has suffered other consequences for his actions, including the cancellation of his Texas law license and the Texas Board's refusal to approve his reapplication for admission, which "forc[ed]" him to take the bar exam again. Malone argues that the hearing judge was wrong to indicate that his self-reporting

and rehabilitation efforts "were undercut by his inability to understand why some of his actions were wrong, including allegedly testifying that he did not remember being admitted to the District Court[.]"  Malone asserts that this is "factually incorrect[,]" as he "was not testifying about being admitted to the court, but rather, that he had forgotten the negative experience surrounding the private reprimand he received from that court."

We overrule the exception.  To be sure, at the remand hearing, Malone testified that he self-reported his actions to courts in Maryland and Virginia and the federal court "in order for everything to be out in the open and so [he] wouldn't have to run and hide and duck anymore."  Malone also responded in the affirmative to questions from his counsel about whether he self-reported because he wanted a fresh start, to rehabilitate himself, and to express remorse.  But, the hearing judge was not required to credit Malone's testimony that he self-reported his misconduct to express remorse for his actions.  It is just as likely that Malone self-reported to other jurisdictions because he was aware that he had an obligation to do so and knew that his misconduct would be reported or uncovered in due course in any event, *i.e*., that his self-reporting was not related to or demonstrative of remorse.

In Attorney Grievance Comm'n v. Keating, 471 Md. 614, 652, 243 A.3d 520, 543 (2020), we determined that the mitigating factor of full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings was present, explaining that the attorney self-reported her conduct in a letter to the Attorney Grievance Commission and fully cooperated with the Commission and a replacement personal representative during probate proceedings.  We observed that Bar Counsel correctly noted

that the attorney "self-reported her conduct only after [an individual] initiated Petition to Caveat proceedings." Id. at 652, 243 A.3d at 543. We concluded, though, that the attorney "voluntarily shared her transgressions with the Attorney Grievance Commission instead of maintaining the charade of the falsely attested will or hoping the Orphans' Court would not find or report her violation." Id. at 652, 243 A.3d at 543. We stated that the attorney had "cooperated fully throughout the process and worked with" the individual who replaced her as personal representative to ensure resolution of a client's estate administration. Id. at 652, 243 A.3d at 543. Similar observations cannot be made in this case about Malone, who had a duty to report his misconduct to other jurisdictions and who, as found by the hearing judge, was not fully cooperative throughout the disciplinary process.

In addition, the consequences that Malone brings to our attention, *e.g.*, the cancellation of his law license in Texas and the refusal of the Texas Board to approve his reapplication for admission to the Bar, as establishing the mitigating factor of the imposition of other penalties or sanctions are nothing more than the natural consequences of his having made false statements on bar applications in Texas. See Attorney Grievance Comm'n v. Bonner, 477 Md. 576, 611, 271 A.3d 249, 270 (2022) ("We will not recognize the natural consequences of intentional misconduct as constituting a mitigating factor that would militate against the imposition of a more serious sanction.").

### *Delay of proceedings*

Malone excepts to the hearing judge having not addressed what he alleges is mitigation evidence concerning the lack of a delay in the proceedings. Malone states that

- 24 -

Bar Counsel filed the petition for disciplinary or remedial action on December 1, 2020, he responded to discovery requests, and the evidentiary hearing occurred on May 5, 2021—five months later. According to Malone, this is "direct evidence that Respondent did delay the underlying proceedings[.]"[8] We overrule the exception.

To the extent that, with this exception, Malone argues that he should receive some form of mitigation credit for not having delayed the proceedings himself, by being dilatory in discovery or perhaps with his invocation of the Fifth Amendment privilege, this is an illusory argument. It is not expected that an attorney would do anything other than participate in disciplinary proceedings and not delay the process. There is no ground for the finding of a mitigating factor simply because an attorney has not engaged in delay of a disciplinary proceeding.

As to any allegation of delay by Bar Counsel, the record in this case demonstrates that, on November 20, 2020, Bar Counsel filed the petition for disciplinary or remedial action and on December 1, 2020, this Court issued an order designating a hearing judge. On January 28, 2021, Bar Counsel filed a "Proof of Service" document, stating that, on January 27, 2021, Bar Counsel served Malone with a writ of summons and copies of the December 1, 2020 order and the petition for disciplinary or remedial action. On February 3, 2021, Malone filed a response to the petition. On February 10, 2021, the hearing judge at the time issued a scheduling and pretrial order, setting the deadlines for discovery and

---

[8]In making the exception, although Malone states that "[t]his is direct evidence that Respondent did delay the underlying proceedings[,]" it is unclear whether Malone means that Bar Counsel delayed the proceedings or whether he means that he did not delay the proceedings.

motions *in limine*, and establishing April 26, 2021 as the pretrial conference date and May 5, 2021 as the evidentiary hearing date.  The parties then engaged in discovery and filed various motions, which we discussed at length in Malone I, 477 Md. at 238-44, 269 A.3d at 290-93.  On April 7, 2021, the hearing judge at the time granted a motion to recuse that Malone filed, and we issued an order designating a new hearing judge.  See id. at 241 n.4, 269 A.3d at 291 n.4.  On May 5, 2021, the evidentiary hearing occurred.  See id. at 244, 269 A.3d at 293.  Based on this sequence of events, it is clear that there was no delay of the disciplinary proceeding by Bar Counsel.

### *Lack of harm*

Finally, Malone excepts to the hearing judge's failure to find as a mitigating factor that no member of the public was harmed by his conduct.  Malone contends that it is "undisputed that no client or member of the public was harmed by [his] actions" and that he "demonstrated that he did not misappropriate any money or cause harm to any members of the public or any clients."  We overrule Malone's exception.

Although Malone is correct that his conduct did not involve misappropriation, as we concluded in Malone I, 477 Md. at 292, 269 A.3d at 322, Malone engaged in a "pattern of dishonest and deceitful conduct in his efforts to be admitted to the Bar in Texas[.]"  In doing so, Malone violated multiple MLRPC and showed disregard for the Texas Board's ability to assess his character and fitness to practice law.  In other words, Malone sought to become licensed to practice law in Texas regardless of whether he was, in fact, qualified to do so.  Such conduct raises the potential of harm to prospective clients.  As we observed in Malone I, 477 Md. at 253, 269 A.3d at 299, the Texas Board "found a 'clear and rational

- 26 -

connection' between [] Malone fraudulently obtaining his Texas law license and 'the likelihood he would injure a client, obstruct the administration of justice, or violate the *Texas Disciplinary Rules of Professional Conduct*.'" Further, our case law does not establish that the lack of harm to a client will automatically result in the determination of a mitigating factor. In this case, it would be inconsistent with the nature of the misconduct at issue to find the mitigating factor of lack of harm to a client where the misconduct by definition does not involve contact with clients but rather concerns falsifying credentials for admission to the Bar, and thereby involves the risk of harm to future clients.

## 2. Aggravating Factors

Malone excepts to the hearing judge's findings concerning the aggravating factors of a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding, and substantial experience in the practice of law. Stated otherwise, Malone admits that he has a prior disciplinary record, but excepts to the hearing judge's findings with respect to all other aggravating factors. We overrule Malone's exceptions.

First, Malone excepts to the hearing judge's finding of the aggravating factor of a selfish motive, arguing that he paid restitution to his Texas clients and went "beyond what was required of him in providing full refunds to his clients[,]" which demonstrates the lack of a selfish motive. We overrule the exception. As discussed above, it was within the hearing judge's province to not credit Malone's testimony as to refunds allegedly given to his clients in Texas. Next, Malone appears to be of the impression that the aggravating factor of having a selfish motive is present only where the taking or attempted taking of

money is concerned, which is incorrect. As the hearing judge found, Malone displayed a dishonest and selfish motive in seeking admission to the Texas Bar by engaging in a course of dishonesty and deceit. In other words, Malone demonstrated a dishonest and selfish motive in pursuing through deceit the benefit of being admitted to the Texas Bar, which, it goes without saying, is a position of stature and value. The aggravating factor of a dishonest and selfish motive applies because of Malone's attempt through intentional dishonesty to gain admission to the Texas Bar, not because of a determination that he wrongfully kept client funds.

Malone excepts to the hearing judge's finding of a pattern of misconduct. According to Malone, engaging in a pattern of misconduct generally means that an attorney "has a prior history with the Attorney Grievance Commission[,]" and he has no such history. Malone contends that his actions in seeking admission to the Texas Bar "constitute an isolated incident over a career that has stretched more than 20 years" and do not constitute a pattern of misconduct. We overrule the exception. To establish the aggravating factor of a pattern of misconduct, Bar Counsel is not required to demonstrate that an attorney has a history of discipline.[9] Further, Malone is incorrect in asserting that

---

[9]In stating that a pattern of misconduct means that an attorney has a prior history with the Commission, Malone cites three cases: <u>Attorney Grievance Comm'n v. Kirwan</u>, 450 Md. 447, 149 A.3d 561 (2016); <u>Attorney Grievance Comm'n v. Hill</u>, 398 Md. 95, 919 A.2d 1194 (2007); and <u>Attorney Grievance Comm'n v. Reinhardt</u>, 391 Md. 209, 892 A.2d 533 (2006). Two of the cases do not involve the finding of a pattern of misconduct as an aggravating factor. In <u>Kirwan</u>, 450 Md. at 463-64, 149 A.3d at 570-71, the hearing judge found a pattern of misconduct where the attorney failed to respond to a letter from the Commission concerning the complaint at issue and noted that the attorney had previously received a letter of warning from the Commission concerning the failure to respond to the

his actions in seeking to be admitted to the Texas Bar represent an isolated incident and not a pattern of misconduct. The hearing judge found that Malone took part in "a pattern of misconduct in his years long pursuit for admission to the Texas Bar, engaging in a sustained course of dishonesty and deceit." In Malone I, 477 Md. at 292, 269 A.3d at 322, in concluding that Malone violated MLRPC 8.4(d), we stated that Malone had engaged in a "pattern of dishonest and deceitful conduct in his efforts to be admitted to the" Texas Bar. The record supports the conclusion that Malone engaged in a pattern of making knowing and intentional misrepresentations over a period of time from at least 2013 to 2016 to the Texas Board in an effort to conceal his disciplinary history and gain admission to the Texas Bar. We overrule the exception.

Next, Malone excepts to the hearing judge's finding of the aggravating factor of bad faith obstruction of the disciplinary proceedings and contends that the hearing judge failed to explain how he engaged in bad faith obstruction. Malone argues that there was no obstruction and that, in Malone I, this Court concluded that he had cooperated during the proceedings and that it was a "flawed premise" to suggest he had been completely uncooperative or otherwise acted in bad faith to surprise Bar Counsel or to gain a tactical advantage. Malone asserts that, to the extent the hearing judge found the aggravating factor

Commission about an unrelated complaint that had been dismissed. We agreed with the hearing judge's finding, but in no way indicated that establishing the aggravating factor of a pattern of misconduct is dependent upon proof of similar conduct in prior matters. See id. at 463-64, 149 A.3d at 570-71. There are numerous cases in which this Court has found the aggravating factor of a pattern of misconduct in which the pattern did not involve "a prior history" with the Commission. See, e.g., Attorney Grievance Comm'n v. Armstrong, 471 Md. 537, 609, 243 A.3d 476, 518 (2020); Attorney Grievance Comm'n v. Sanderson, 465 Md. 1, 68-69, 213 A.3d 122, 161 (2019); Slate, 457 Md. at 648-49, 180 A.3d at 157.

of bad faith obstruction related to his invocation of the Fifth Amendment, in <u>Malone I</u>, this Court rejected that position and concluded that an attorney has a right under the Fifth Amendment to decline to answer questions. Malone maintains that the hearing judge erred in finding bad faith obstruction of the proceedings, as this Court determined that he "was within his rights to invoke the Fifth Amendment, did cooperate during discovery, and that [Bar Counsel] failed to follow the proper procedures once the Fifth Amendment issues had been raised."

We overrule Malone's exception. In the original and supplemental findings, the hearing judge found that Malone engaged in bad faith obstruction of the disciplinary process by invoking his Fifth Amendment privilege in response to every question asked of him at deposition, including questions asking him to spell his name for the record, whether he had received documents from Bar Counsel, and whether he was able to see what Bar Counsel was sharing on the screen. The hearing judge pointed out that, at the hearing on Bar Counsel's motion *in limine*, he found that Malone had invoked the Fifth Amendment privilege in bad faith. Contrary to Malone's contention, in <u>Malone I</u>, this Court did not reject the argument that Malone had engaged in bad faith obstruction by invoking the Fifth Amendment. Rather, in <u>Malone I,</u> 477 Md. at 284, 269 A.3d at 317, "we conclude[d] that the hearing judge acted within his discretion to the extent he precluded [] Malone from testifying at the hearing concerning his alleged violations of the MLRPC." We concluded that Malone asserted the Fifth Amendment in bad faith at his deposition as to three questions, explaining:

> Three of the questions Bar Counsel asked at Mr. Malone's deposition

bore directly on the alleged MLRPC violations:

• "[A]re you disputing that you received a reprimand from Virginia?"

• "[A]re you disputing that you received a private reprimand from the United States District Court for the District of Maryland in 2012?"

• "[A]re you disputing that you knowingly and intentionally made misrepresentations on your Texas Bar application for admission to the Texas Bar?"

Given that, in his answer to the Petition, Mr. Malone already had substantively addressed each of these points, it is clear that Mr. Malone asserted the Fifth Amendment at his deposition in bad faith as to these questions.

Id. at 284 n.20, 269 A.3d at 317 n.20 (alterations in original).[10]

In this case, Malone obstructed the disciplinary proceeding by not participating in the deposition in good faith and caused unnecessary proceedings before the hearing judge, *i.e.*, litigation of the motion *in limine*. Malone invoked the Fifth Amendment privilege against self-incrimination to every question asked at deposition, including the three above to which we specifically found that the invocation of the Fifth Amendment privilege was in bad faith. See Malone I, 477 Md. at 240, 284 n.20, 269 A.3d at 291, 317 n.20. After Malone invoked the Fifth Amendment, although Bar Counsel did not file a motion to compel, Bar Counsel filed a motion *in limine*, Malone filed an opposition to the motion, and the hearing judge conducted a hearing on the motion *in limine* prior to the disciplinary

---

[10]By contrast, in Malone I, 477 Md. at 287, 269 A.3d at 318, we stated that we could not "conclude that Mr. Malone improperly invoked the Fifth Amendment privilege in response to Bar Counsel's one, very broad question concerning mitigation[.]"

hearing. See id. at 241-42, 269 A.3d at 291-92. After the hearing, the hearing judge issued an order precluding Malone from testifying at the disciplinary hearing, and this Court upheld the hearing judge's decision precluding Malone from testifying as to the merits and remanded to allow Malone the opportunity to testify concerning mitigation. See id. at 244, 262-63, 269 A.3d at 293, 304.

Regardless of whether Bar Counsel filed a motion to compel, Malone's invocation of the Fifth Amendment privilege against self-incrimination resulted in additional proceedings before the hearing judge and curtailed the deposition. In addition, Malone's blanket invocation of the Fifth Amendment privilege against self-incrimination was contrary to case law, which indicates that it is improper for a deponent to make a blanket assertion of the privilege. See Malone I, id. at 270, 269 A.3d at 308 (citing Moser v. Heffington, 465 Md. 381, 404, 214 A.3d 546, 559 (2019)). For all of these reasons, the aggravating factor of bad faith obstruction of the disciplinary proceeding is applicable.

We offer two notes of caution, however, regarding application of the aggravating factor of bad faith obstruction of the disciplinary proceeding, where the factor relates to an attorney's invocation of the Fifth Amendment privilege against self-incrimination. First, if Bar Counsel chooses not to move to compel an attorney to answer a question as to which the attorney has asserted the privilege against self-incrimination in a non-blanket manner, it should be the rare case in which a hearing judge concludes that the aggravating factor of bad faith obstruction of the disciplinary proceeding applies based on the attorney's invocation of the privilege. That is, if Bar Counsel chooses not to challenge an attorney's non-blanket invocation of the privilege through a motion to compel, a hearing judge should

- 32 -

be skeptical of a subsequent claim by Bar Counsel that the attorney asserted the privilege in bad faith and that the invocation of the privilege obstructed the disciplinary proceeding.

As we explained in Malone I, id. at 284 n.20, 269 A.3d at 317 n.20, Malone invoked the privilege in bad faith in several instances during his deposition. And, although Bar Counsel did not move to compel Malone to answer any of the questions as to which he asserted the privilege, but instead immediately (and improperly) moved for sanctions, it nevertheless is clear that Malone's bad-faith invocation of the privilege obstructed the proceeding. Malone asserted the privilege in response to every question Bar Counsel asked at his deposition, including basic questions such as:

- "[C]an you just state and spell your name for the record, please."

- "[D]id you receive the documents that I sent you that I'll be referring to today?"

- "[A]re you able to see what I am sharing on the screen?"

- "[Y]ou received Petitioner's interrogatories and Petitioner's request for production of documents that were served upon you; is that right?"

Malone also told Bar Counsel at the deposition that he intended to assert the Fifth Amendment privilege in response to any and all questions. Plainly Malone's blanket assertion of the privilege frustrated Bar Counsel's legitimate effort to depose him.

Our second caveat is that, hearing judges in issuing their findings in attorney grievance cases, and this Court in its independent review of the record, must tread carefully in determining whether an attorney's invocation of the Fifth Amendment privilege during the disciplinary proceeding constitutes bad faith obstruction of the proceeding. We must take care not to chill the good faith invocation of the privilege against self-incrimination,

recognizing that the line between a valid and an invalid assertion of the privilege is often difficult to discern.

Finally, Malone excepts to the hearing judge's finding of the aggravating factor of substantial experience in the practice of law based on his admission to the Maryland Bar in 1999. Malone contends that he left Maryland in 2007 and there was no evidence that he "was substantially experienced in the practice of law in Maryland[.]" We overrule the exception.

Malone was admitted to the Bar of Maryland in 1999, approximately fourteen years before he began seeking admission to the Texas Bar in June 2013. As of 2013, Malone had been admitted to the Bar of Virginia in 1999 and had been admitted to practice in numerous United States District Courts, such as: the Eastern District of Virginia in 2001, the Western District of Virginia in 2005, the District of Maryland in 2003, the District of Columbia in 2003, the Central District of Illinois in 2004, and the Northern District of Illinois in 2013. In addition, Malone had practiced law sufficiently to have been the subject of attorney discipline in at least two of the jurisdictions in which he had been admitted during the fourteen years—the Commonwealth of Virginia in 2011 for conduct involving the complaints of two clients and the United States District Court for the District of Maryland in 2012 for conduct related to his failure to appear for a hearing in a bankruptcy case. Further, in June 2016, at the time that the Supreme Court of Texas cancelled his license to practice law in the State, Malone had clients, after having been admitted to the Bar since only April 2015.

In <u>Attorney Grievance Comm'n v. Neverdon</u>, 473 Md. 631, 708, 251 A.3d 1157,

1203 (2021), we overruled an attorney's exception to the hearing judge's finding of the aggravating factor of substantial experience in the practice of law, disagreeing with the attorney's contention that the factor did not apply because, although the attorney had substantial experience with personal injury cases, he had limited experience with estate law cases. We concluded that, notwithstanding the attorney's contention, the attorney had been admitted to the Bar of Maryland in 1999 and, at the time that he began representing the clients at issue, "he had approximately eighteen years of experience overall as an attorney." Id. at 708-09, 251 A.3d at 1203. Just as we were not persuaded that application of the aggravating factor substantial experience in the practice of law requires that a respondent have experience in the particular area of law at issue, we are not persuaded by Malone's contention that application of the aggravating factor of substantial experience in the practice of law requires sustained experience in the practice of law in Maryland, not other jurisdictions.

### (B) Sanction

Bar Counsel recommends that we disbar Malone, who recommends that we impose a three-month suspension from the practice of law in Maryland.

In Slate, 457 Md. at 646-47, 180 A.3d at 155-56, we stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have

caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Citation omitted).

In Slate, id. at 648-49, 180 A.3d at 157, a case involving intentional dishonesty during the bar admission process, we disbarred an attorney who violated MLRPC 8.1(a), 8.1(b), 8.4(c), and 8.4(d). The attorney knowingly concealed material information about himself on his bar application, including answering "No" to the catchall question on the application, falsely stating under oath that the facts in his bar application remained true,

falsely stating to Bar Counsel that he had provided all required information during the bar application process, failing to supplement his bar application with the required information, and concealing the information throughout the bar application process, including during the character interview. Id. at 648-49, 180 A.3d at 157. The attorney's misconduct was aggravated by "a dishonest or selfish motive, as he concealed material information to get admitted to the Bar of Maryland[,]" a pattern of dishonesty, multiple violations of the MLRPC, a refusal to acknowledge the wrongful nature of his misconduct, and a likelihood of repetition of the misconduct. Id. at 648-49, 180 A.3d at 157. We discerned only two mitigating factors—the absence of prior attorney discipline and inexperience in the practice of law. See id. at 649, 180 A.3d at 157.

In determining that disbarment was the appropriate sanction, we observed that, in Attorney Grievance Comm'n v. Van Dusen, 443 Md. 413, 416, 116 A.3d 1013, 1015 (2015), we had "unequivocally stated" that, at a minimum, a lawyer must be trustworthy, that "[o]ne who wants to be a lawyer in Maryland must disclose to the [State Board of Law Examiners] and this Court information that bears on that trait[,]" and that "[f]ailure to satisfy those requirements may prevent admission to the bar or, when discovered, result in disbarment." Slate, 457 Md. at 647, 180 A.3d at 156. We stated:

> This Court further explained that disbarment is the appropriate sanction where a lawyer conceals material information during the bar admission process, stating:
>
> > This Court has also found disbarment appropriate when it is learned that a lawyer concealed material information during the bar admission process. The Court has reasoned that disbarment is warranted because the deliberate failure to disclose material information plainly reflects on the

- 37 -

truthfulness and candor of the applicant and no character qualification to practice law is more important than truthfulness and candor. *Attorney Grievance Comm'n v. Keehan*, 311 Md. 161, 169, 533 A.2d 278[, 282] (1987) (disbarring lawyer who withheld material information relating to his prior employment experience); [*Attorney Grievance Comm'n v.*] *Hunt*, 435 Md. [133,] 143-44, 76 A.3d 1214[, 1220 (2013)] (disbarring attorney who failed to disclose past criminal conduct); *Attorney Grievance Comm'n v. Gilbert*, 307 Md. 481, 496-497, 515 A.2d 454[, 462] (1986) (disbarring an attorney who failed to disclose involvement in a civil suit).

Slate, 457 Md. at 647-48, 180 A.3d at 156 (quoting Van Dusen, 443 Md. at 432, 116 A.3d at 1024-25) (brackets omitted).

In Slate, 457 Md. at 649, 180 A.3d at 157, applying the principles discussed, in light of the attorney's misconduct and the aggravating and mitigating factors, "[w]e fully agree[d] with Bar Counsel that" disbarment was the appropriate sanction, given that the attorney "knowingly engaged in dishonesty in multiple instances." We stated that there was "little doubt that, had [the attorney]'s dishonesty come to light during the bar application process, we would have determined that he lacked the character and fitness necessary for admission to the Bar of Maryland." Id. at 649, 180 A.3d at 157 (footnote omitted). We explained that, "[a]bsent compelling extenuating circumstances, disbarment is ordinarily the sanction for intentional dishonest conduct." Id. at 650, 180 A.3d at 158 (cleaned up). The attorney did not contend that compelling extenuating circumstances existed and, upon our independent review, we concluded that the hearing judge's opinion was "devoid of any facts that could possibly constitute compelling extenuating circumstances." Id. at 650, 180 A.3d at 158.

Prior to Slate, in Attorney Grievance Comm'n v. Brown, 415 Md. 269, 279, 282,

999 A.2d 1040, 1046, 1048 (2010), a case that did not involve dishonesty during the bar admission process, this Court suspended from the practice of law in Maryland for ninety days an attorney who violated Maryland Rules of Professional Conduct[11] 4.1(a)(1) (Truthfulness in Statements to Others), 8.1(a), 8.4(c), 8.4(d), and a Maryland Rule governing the maintenance of trust accounts.  The attorney misrepresented to a third party on one occasion and to Bar Counsel twice that he had prepared a release and sent it to a client, when he knew that to be untrue.  See Brown, 415 Md. at 278, 281, 999 A.2d at 1046-47.  The attorney also improperly withdrew funds from his attorney trust account by drawing on his trust account a check payable to cash, which he then gave to the client.  See id. at 278, 999 A.2d at 1045.  We found five mitigating factors: (1) the attorney had an "otherwise impeccable" twenty-eight-year record as a member of the Maryland Bar; (2) the third party was not the attorney's client and the attorney had no duty to draft a release on her behalf; (3) the attorney did not misuse the funds that he improperly withdrew for personal financial gain; (4) the attorney conceded wrongdoing and "appear[ed] willing to take responsibility for his actions"; and (5) the attorney assisted his counsel in procuring the release and provided the service to the third party free of charge.  Id. at 281-82, 999 A.2d at 1047-48.  We concluded that the attorney's misconduct did "not rise to the level of disbarment or indefinite suspension, recognizing that cases where those sanctions were imposed generally involved more egregious misconduct."  Id. at 280, 999 A.2d at 1047

---

[11]Before being renamed the MLRPC effective July 1, 2005, the Rules were named the Maryland Rules of Professional Conduct, or MRPC.  See Attorney Grievance Comm'n v. Page, 430 Md. 602, 606 n.1, 62 A.3d 163, 165 n.1 (2013).  The series of events at issue in Brown began before this change.  See Brown, 415 Md. at 274, 999 A.2d at 1043.

(citations omitted).  We agreed with Bar Counsel, though, that a sanction less than suspension would have been inappropriate, and determined that, under the totality of the circumstances, a ninety-day suspension was warranted.  See id. at 280, 282, 999 A.2d at 1047-48.

In Attorney Grievance Comm'n v. Thompson, 462 Md. 112, 137, 139, 198 A.3d 234, 249-50 (2018), another case not involving false statements on a bar application, we suspended for sixty days an attorney who violated Maryland Attorneys' Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Fees), 1.15(a), (b), (c), and (d) (Safekeeping Property), 1.16(d) (Declining or Terminating Representation), 5.5(b) (Unauthorized Practice of Law), 8.1(a) and (b), and 8.4(a), (c), and (d).[12]  We concluded that the attorney, who was licensed only in the District of Columbia and the United States District Court for the District of Columbia, "maintained a continuous presence in" Maryland for the practice of law and held out that she was admitted to practice law in Maryland, despite not being licensed to practice law in Maryland, misrepresented her practice area of law to Bar Counsel's investigator, and mismanaged client funds. Thompson, 462 Md. at 118-19, 135-36, 198 A.3d at 238, 248. The attorney's misrepresentation concerning her practice consisted of telling Bar Counsel's investigator that she exclusively handled bankruptcy cases, not immigration cases.  See id. at 119-20, 198 A.3d at 238.  We determined the existence of only one aggravating factor—multiple

---

[12]The attorney's reinstatement was conditioned on the attorney completing a course with an emphasis on responsible maintenance of an attorney trust account. See Thompson, 462 Md. at 139, 198 A.3d at 250.

violations of the Rules—and concluded that the attorney had established the mitigating factors of the absence of prior attorney discipline, the absence of a dishonest or selfish motive, and inexperience in the practice of law. See id. at 138, 198 A.3d at 249.

In Thompson, there was a concurring opinion, discussing that a sixty-day suspension was appropriate because the attorney "had not engaged in the type of intentionally dishonest conduct that warrants disbarment." Id. at 140, 198 A.3d at 250-51 (Watts, J., concurring in the judgment only). The concurring opinion explained that the record was unclear as to why the attorney told the investigator that she exclusively handled bankruptcy cases and not immigration cases, but, nevertheless, it was "clear that this [was] not the type of misrepresentation that would warrant disbarment." Id. at 143, 198 A.3d at 252 (Watts, J., concurring in the judgment only). The concurring opinion pointed out that the attorney "essentially told Bar Counsel's investigator that she handled bankruptcy cases that would not constitute the unauthorized practice of law in Maryland, and, she in fact handled immigration cases that would not constitute the unauthorized practice of law." Id. at 143, 198 A.3d at 252 (Watts, J., concurring in the judgment only). Like the Majority, the concurring opinion concluded that this was "simply not the type of intentional dishonesty that would require compelling extenuating circumstances to excuse or that would warrant disbarment." Id. at 143, 198 A.3d at 252 (Watts, J., concurring in the judgment only) (cleaned up).

Recently, in Attorney Grievance Comm'n v. Collins, 477 Md. 482, 510, 530, 270 A.3d 917, 934, 946 (2022), we indefinitely suspended from the practice of law in Maryland an attorney who violated Maryland Attorneys' Rules of Professional Conduct 3.3(a)(1)

(Candor Toward the Tribunal), 8.1(a), 8.1(b), 8.4(b), 8.4(c), and 8.4(d). We concluded that the attorney falsely advised this Court and Bar Counsel that she did not receive a complaint and the attorney falsely stated that she had complied with Maryland Rule 19-742 (now Maryland Rule 19-741) in petitioning for reinstatement. See id. at 530, 532, 270 A.3d at 946-47. The attorney's misconduct was aggravated by prior attorney discipline, a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary process, substantial experience in the practice of law, and illegal conduct. See id. at 512, 270 A.3d at 935. There were no mitigating factors. See id. at 513, 270 A.3d at 935.

In determining the appropriate sanction, we began by examining the standard set forth in Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 413-14, 773 A.2d 463, 485 (2001), in which we held:

> In cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MARPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

Collins, 477 Md. at 514, 270 A.3d at 936 (brackets omitted). In Vanderlinde, 364 Md. at 418, 773 A.2d at 488, "[w]e stated that 'disbarment ordinarily should be the sanction for intentional dishonest conduct.'" Collins, 477 Md. at 515, 270 A.3d at 937 (brackets omitted). In Collins, id. at 516, 270 A.3d at 937, we observed that, over the past two

- 42 -

decades, "the standard announced in <u>Vanderlinde</u> ha[d] been relied upon in numerous cases resulting in a sanction of disbarment." (Footnote omitted).

We noted, however, that "[d]espite the standards announced in <u>Vanderlinde</u> and recently repeated in <u>Miller</u>, [467 Md. 176, 223 A.3d 976,] there ha[d] been an increasing number of cases involving intentional dishonesty in which we ha[d] not imposed the sanction of disbarment." <u>Collins</u>, 477 Md. at 518, 270 A.3d at 938. In <u>Collins</u>, <u>id.</u> at 518-30, 270 A.3d at 938-46, after a review of prior relevant case law from the past several decades (which we need not repeat here), we distilled several key points. First, "[g]iven th[e] long line of cases in which we ha[d] not imposed the sanction, it [was] time to expressly recognize that our holding in <u>Vanderlinde</u> no longer exclusively sets the standard for imposition of the sanction in cases involving intentional dishonesty." <u>Collins</u>, 477 Md. at 529, 270 A.3d at 945. As the case law demonstrated, "we ha[d] not in cases involving intentional dishonest conduct consistently applied our holding in <u>Vanderlinde</u> and required compelling extenuating circumstances to justify a sanction less than disbarment." <u>Collins</u>, 477 Md. at 530, 270 A.3d at 945. Based on our review, we stated:

> What can be gleaned from the sanctions imposed in cases involving intentional dishonesty post-<u>Vanderlinde</u> in recent years, is that, increasingly, we have not imposed the sanction of disbarment where the dishonest conduct at issue does not involve theft, fraud, harm to a client or third party, or the intentional misappropriation of funds. We have on multiple occasions imposed a sanction less than disbarment in cases involving intentional dishonest conduct where there was no theft or intentional misappropriation of funds by the attorney, the attorney had not benefitted or profited from the misconduct, and no client had been harmed. Going forward, it is clear that cases involving dishonesty and knowingly made false statements will be assessed on an individual basis to determine whether the misconduct at issue gives rise to deployment of the standard set forth in <u>Vanderlinde</u>, namely, whether compelling extenuating circumstances that are the "root cause" of

- 43 -

the misconduct are required to warrant a sanction less than disbarment.

Collins, 477 Md. at 530, 270 A.3d at 945-46.

In Collins, id. at 530, 270 A.3d at 946, applying the principles discussed above, we concluded that an indefinite suspension was the appropriate sanction. We explained:

> [A]lthough [the attorney] was found to have engaged in intentional dishonest conduct by making obvious and inexplicably false statements in a petition for reinstatement and by failing to acknowledge correspondence from Bar Counsel concerning a complaint that was ultimately dismissed, given the nature of the violations of the MARPC, the lack of harm to any client, and the circumstance that the case does not involve theft, misappropriation of client funds, or other pecuniary benefit to [the attorney], the appropriate sanction for [the attorney]'s misconduct is an indefinite suspension. Considering the nature and circumstances of the false statements, as well as recent case law in which we have not consistently imposed the sanction of disbarment for misconduct involving intentional dishonesty, and that we now expressly recognize that the Vanderlinde standard is not implicated in all instances of intentional dishonesty, [the attorney]'s misconduct does not warrant disbarment. [The attorney]'s misconduct did not involve circumstances for which we have generally applied the Vanderlinde standard, for instance, theft, fraud, intentional misappropriation, or harm to a client. Indeed, [the attorney]'s misconduct has resulted in harm only to herself.

Collins, 477 Md. at 533-34, 270 A.3d at 947-48.

After Collins, in Bonner, 477 Md. at 595-96, 627, 271 A.3d at 261, 280, we disbarred an attorney who violated District of Columbia Rules of Professional Conduct 8.4(b) and 8.4(c) by engaging "in a pattern of misconduct in which he intentionally misappropriated more than $14,000 from" his law firm in thirty-five separate transactions and took actions "in an effort to conceal the personal nature of expenses that he submitted to the Firm for reimbursement, including: falsely reporting 'client development' time through entries on expenses receipts and statements and by falsely creating calendar entries

and time entries identifying time spent with clients." (Some internal quotation marks omitted). The attorney's misconduct was aggravated by a dishonest or selfish motive, a pattern of misconduct, illegal conduct, and substantial experience in the practice of law. See id. at 608, 271 A.3d at 268-69. We concluded that the mitigating factors of no prior attorney discipline, good faith efforts to make restitution and to rectify the consequences of his actions, remorse, a cooperative attitude toward the attorney discipline proceedings, character or reputation, and unlikelihood of repetition of the misconduct applied. See id. at 610-15, 271 A.3d at 269-73.

In Bonner, id. at 621, 271 A.3d at 276, we discussed Vanderlinde and Collins and stated that we "start with the notion that, in cases involving intentional dishonesty, disbarment is ordinarily warranted[,]" but we "do not apply this generalization as a bright-line rule"; rather, we "look at the individual facts and circumstances of the particular case." (Citations omitted). In Bonner, 477 Md. at 622, 271 A.3d at 277, we determined that the attorney's "intentional dishonest conduct involving misappropriation d[id] not align itself with the intentional dishonest conduct in cases in which we have imposed a sanction less than disbarment." Rather, the attorney's "intentional dishonest conduct involving misappropriation of funds [was] of the variety in which we have imposed a sanction of disbarment." Id. at 624, 271 A.3d at 278 (cleaned up). We determined that the attorney's misconduct gave "rise to deployment of the standard set forth in *Vanderlinde*, namely whether compelling extenuating circumstances that are the 'root cause' of the misconduct are required to warrant a sanction less than disbarment." Bonner, 477 Md. at 625, 271 A.3d at 279 (cleaned up). We determined that the attorney's emotional problems failed to

- 45 -

satisfy that standard or constitute "a mitigating factor that demonstrates compelling extenuating circumstances thereby warranting a sanction less than disbarment." Id. at 626, 271 A.3d at 279. We concluded that the mitigating factors did "not tip the scales in favor of a sanction less than disbarment[,]" and stated: "Considering the nature of [the attorney]'s misconduct and the various mitigating and aggravating factors present [], we conclude that disbarment is the appropriate sanction." Id. at 627, 271 A.3d at 280 (citations omitted).

In this case, upon consideration of the nature of Malone's intentional dishonest misconduct and the mitigating and aggravating factors established, we conclude that the appropriate sanction for Malone's misconduct is disbarment. Malone violated MLRPC 8.1(a), 8.1(b), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) by knowingly and intentionally misrepresenting his disciplinary history on his Texas Bar application; intentionally failing to disclose his admission to different bars to conceal his disciplinary history from the Texas Board; and falsely stating that his disclosure failures were the result of not reading bar application questions carefully enough. In addition, Malone knowingly and intentionally failed to supplement his Texas Bar application and re-applications with information about his bar admissions and disciplinary history, and thereby failed to correct the misapprehension that he had fully disclosed his disciplinary history in all jurisdictions in which he was licensed. By knowingly and intentionally providing false responses on sworn Texas Bar applications, when he declared under oath that the information he provided was true and correct, Malone committed perjury. In sum, Malone knowingly and intentionally made numerous false statements and engaged in intentional dishonesty over a period of years, committing perjury and establishing a pattern of dishonest and deceitful conduct in

applying, and eventually being admitted, to the Texas Bar.

We determine the same five aggravating factors as the hearing judge: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) bad faith obstruction of the attorney discipline proceeding; and (5) substantial experience in the practice of law. And we identify the same two mitigating factors as the hearing judge: (1) volunteer work in the community; and (2) remorse.[13] Overall, we conclude that Malone's misconduct is not of the type that coincides with the intentional dishonesty in cases in which a sanction less than disbarment has been warranted.

In Slate, 457 Md. at 647, 180 A.3d at 156, we stated that disbarment is appropriate where an attorney conceals material information during the bar admission process. In Slate, id. at 650, 180 A.3d at 158, we applied the Vanderlinde standard, stating that, "absent compelling extenuating circumstances, disbarment is ordinarily the sanction for intentional dishonest conduct[,]" and we concluded that no such compelling extenuating circumstances existed to warrant a sanction less than disbarment. (Cleaned up). As Collins, 477 Md. at 530, 270 A.3d at 946, now instructs, in cases involving intentional dishonesty such as this case, we begin with the view that disbarment is appropriate but assess the case "on an individual basis to determine whether the misconduct at issue gives rise to deployment of the standard set forth in Vanderlinde, namely, whether compelling

---

[13]The hearing judge found that Malone had "demonstrated remorse to the degree to which he understands his ethical shortcomings[,]" and that Malone "has a fundamental misunderstanding of legal ethics in general, and in particular, why it is fundamentally important that attorneys be genuine and honest." Bar Counsel does not except to the hearing judge's finding of the mitigating factor of remorse. As such, we decline to disturb the hearing judge's finding that Malone has demonstrated remorse to the degree specified.

extenuating circumstances that are the 'root cause' of the misconduct are required to warrant a sanction less than disbarment."

In other words, in assessing the appropriate sanction in this case, we recognize that, consistent with our holding in Collins, application of the Vanderlinde standard may no longer be fitting in each and every case of intentional dishonest conduct. We hasten to point out, though, that Collins does not stand for the proposition that disbarment is warranted, absent compelling extenuating circumstances, only where there is harm to a client, theft, fraud, or misappropriation of client funds. It is clear from Collins that rather than applying a bright-line test, we assess the facts and circumstances of each case individually to determine whether the Vanderlinde standard applies. In some instances, the potential applicability of the Vanderlinde standard will be quite clear, *i.e.*, cases involving theft, intentional misappropriation, harm to a client, and fraud, and, in other cases, perhaps less so.

In Collins, 477 Md. at 530-32, 270 A.3d at 946-47, the intentional dishonest conduct at issue involved Collins being found to have falsely denied receipt of a complaint, when allegations concerning the merits of the complaint were ultimately dismissed by Bar Counsel, and to have falsely stated in a petition for reinstatement that she had complied with the requirements of the Rule governing reinstatement to the Maryland Bar, when she had not submitted to Bar Counsel an affidavit as required by the Rule. At the disciplinary hearing, Collins, who had been permitted to offer evidence only as to mitigation, testified:

> In mitigation, I have never, until June the 8th, ever been disciplined. And when I was disciplined, I took every effort not to violate the Court again. I thought I was doing right. I did not -- I am remorseful, but I did not fully

read and understand the law that required me to file an affidavit. But I thought that at the time, that giving the cases and allowing the clients to agree to some other attorneys to handle the cases was sufficient. That I had adequately prepared, prepared and made sure that the two clients that I have privately at the time were taken care of and were not left hanging. In mitigation, it was not my intent to lie to the Court. In fact, I knew I had not filed the affidavit. And in reviewing in mitigation, you'll see that I did not say that I had filed an affidavit. Because I knew I had not filed the affidavit as required.

Id. at 498-99, 270 A.3d at 927 (paragraph break omitted).

In addressing the issue of whether the hearing judge erred in finding that Collins made knowing and intentional misrepresentations in the petition for reinstatement, we indicated that this was a close question. See id. at 498, 270 A.3d at 926-27. In discussing that Collins had affirmed under penalties of perjury that the statements in her petition for reinstatement were true, we stated:

> [T]he false oath[] may have been provided as a result of confusion or mistake and not willfully done. However, as Collins was precluded from testifying at the disciplinary hearing except as to mitigation, based on the exhibits admitted into evidence, the hearing judge's findings that Collins's "statements were false when made and she knew they were false when made[,]" are not clearly erroneous. As such, clear and convincing evidence supports the hearing judge's conclusion that Collins violated MARPC 8.4(b) by committing a criminal act that reflects adversely on her honesty and trustworthiness.

Id. at 509, 270 A.3d at 933.

Although in Collins, id. at 499, 510, 270 A.3d at 927, 934, we upheld violations of Rules 3.3(a)(1), 8.1(a), 8.4(b), 8.4(c), and 8.4(d), we cautioned that,

> [i]n determining whether to seek the Commission's authorization for the filing of a petition for disciplinary or remedial action alleging that an attorney has knowingly made a false statement in connection with a petition for reinstatement, Bar Counsel must be watchful for cases in which attorneys are doing nothing more than filing a petition for reinstatement and stating their

- 49 -

views with respect to having satisfied all of the necessary prerequisites as opposed to attorneys who are knowingly making false statements in a petition for reinstatement.

Assessing the circumstances of this case, however, leads to the conclusion that the Vanderlinde standard is triggered, and that disbarment is the appropriate sanction. To be sure, as with the misconduct in Collins, 477 Md. at 534, 270 A.3d at 948, Malone's misconduct did not involve some of the circumstances for which we have generally applied the Vanderlinde standard, for instance, theft, intentional misappropriation, or harm to a client. Malone's misconduct, though, was far more egregious than the misconduct in Collins. Although Malone's misconduct did not involve harm to a client, theft, or misappropriation of client funds, the misconduct at issue is of the type that gives rise to deployment of the Vanderlinde standard, and, absent a showing of compelling extenuating circumstances, disbarment is warranted.

Malone's misconduct involved numerous false statements concealing his prior disciplinary history and bar admissions in applications for bar admission over a period of years and, in our view, constituted fraud. Black's Law Dictionary defines "fraud[,]" in pertinent part, as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment" or "[a] reckless misrepresentation made without justified belief in its truth to induce another person to act." *Fraud*, Black's Law Dictionary (11th ed. 2019). Malone engaged in intentional deception in a bar admission process to influence the Texas Board to make a decision favorable to him for his own personal gain.

We have previously disbarred attorneys who have committed fraudulent acts not

involving the receipt or taking of money. For instance, in <u>Attorney Grievance Comm'n v. Garcia</u>, 410 Md. 507, 509, 514, 518-19, 529, 979 A.2d 146, 147, 150, 152-53, 159 (2009), this Court disbarred an attorney who violated Maryland Rules of Professional Conduct 8.4(a), (b), (c), and (d) where the attorney signed his name on a letter purporting to verify employment for a visa application by representing himself to be the employer of the visa applicant, and his act of signing the letter was intended to commit a fraud, deceive, or misrepresent to the federal government that he was the applicant's employer. The attorney pled guilty to conspiracy to commit immigration fraud in violation of federal statutes for "making a false statement related to his signing the false employer letter, knowing that it was false." <u>Id.</u> at 518, 979 A.2d at 153. We applied the <u>Vanderlinde</u> standard, concluding that because the attorney's action of signing the letter was meant to commit a fraud, deceive, or misrepresent, disbarment was warranted absent compelling extenuating circumstances. <u>See Garcia</u>, 410 Md. at 522, 979 A.2d at 155. Because there were no compelling extenuating circumstances, we ordered disbarment. <u>See id.</u> at 529, 979 A.2d at 159.

The intentional dishonest conduct in <u>Collins</u> and in other cases, which did not trigger the <u>Vanderlinde</u> standard, and the misconduct in this case and others, which triggered the standard, are of an entirely different nature. <u>Collins</u> involved a respondent who had not submitted to Bar Counsel an affidavit as required by the applicable Rule—a circumstance that would have been obvious to Bar Counsel immediately upon receipt of Collins's petition for reinstatement. <u>See Collins</u>, 477 Md. at 493, 270 A.3d at 923-24. Despite Collins's statement in the petition that there had been no new complaints filed against her,

Bar Counsel had, in actuality, sent correspondence to Collins notifying her of the existence of a new complaint—another circumstance that would also have been immediately apparent to Bar Counsel upon receipt of Collins's petition. See id. at 493, 270 A.3d at 924.[14] As we stated in Collins, 477 Md. at 531, 270 A.3d at 946, Collins's intentional dishonesty was as inexplicable as it was dishonest. Neither Bar Counsel nor the Court was deceived by Collins's behavior. In the end, Collins injured only her own effort to gain reinstatement.

On the other hand, Malone, through intentionally dishonest conduct, fraudulently obtained admission to the Texas Bar. Malone's misconduct involved not only fraud but also a blatant disregard for the truth and the legal system in general, and the potential for harm to clients. Tellingly, as discussed in Malone I, 477 Md. at 254, 269 A.3d at 299, in 2016, when the Supreme Court of Texas canceled Malone's Texas law license, the Court's order required Malone to immediately notify his Texas clients and all tribunals in the State in which he had a pending matter of the order and submit an affidavit stating he had done so. Malone had already begun representing clients in Texas. Rather than comply with the order of the Supreme Court of Texas, Malone submitted an affidavit asserting that "'[the Supreme] Court has no authority to compel me to do a thing... Requiring me to submit memos to judges and then file an affidavit with this Court constitutes involuntary servitude.'" Id. at 254, 269 A.3d at 299 (alteration and ellipsis in original).

---

[14]In addition, after filing a petition for disciplinary or remedial action based, in part, on allegations from the new complaint, Bar Counsel elected not to pursue any allegations related to the merits of the complaint. See Collins, 477 Md. at 489, 270 A.3d at 921.

The Supreme Court of Texas withdrew and cancelled Malone's Texas law license, and after Malone reapplied for admission to the Texas Bar, the Texas Board concluded that Malone did not have the good moral character required for admission to practice law in Texas and denied the reapplication. See id. at 254-55, 269 A.3d at 299-300. In August 2017, Malone filed a petition for review of the Texas Board's decision, alleging "that the Board denied him admission 'because it wanted to punish him for "pulling one over" on them and failing to be humble in re-applying for a license.'"[15] Malone I, 477 Md. at 255, 269 A.3d at 300. In claiming that he had pulled one over on the Texas Board and that the Board was out to get him, Malone continued to demonstrate that he failed to appreciate the wrongfulness of his conduct and that he lacked the basic characteristic of honesty necessary to be a lawyer.

Malone engaged in intentional dishonest conduct over a period of years for the self-serving purpose of fraudulently gaining admission to the Texas Bar by precluding bar admission officials from making an accurate determination of his fitness to practice law. Malone's conduct was both intentionally dishonest and sustained, and demonstrated a fundamental lack of regard for the bar admission process. All of this shows that Malone engaged in intentional dishonesty under circumstances that demonstrate he lacks the basic character traits expected of a lawyer—honesty and respect for the legal system.

Even if we had sustained Malone's exceptions to the hearing judge's findings

_____

[15]Later, Malone filed a "Notice of Nonsuit" and requested that the court dismiss his claims against the Texas Board, and the claims were dismissed. Malone I, 477 Md. at 255-56, 269 A.3d at 300.

concerning mitigating and aggravating factors and determined that additional mitigating factors were present and that the only aggravating factor was prior attorney discipline, we would still conclude that the <u>Vanderlinde</u> standard applies and that disbarment (rather than a lesser sanction) is warranted based on the nature of the intentional dishonest misconduct in this case. Unlike in <u>Brown</u>, 415 Md. at 282, 999 A.2d at 1048, and <u>Thompson</u>, 462 Md. at 139, 198 A.3d at 250, cases relied upon by Malone, in which we imposed a ninety-day suspension and a sixty-day suspension, respectively, in this case, Malone engaged in the type of intentional dishonest conduct for which the <u>Vanderlinde</u> standard is intended. The misconduct established in <u>Brown</u> and <u>Thompson</u>, and, in <u>Collins</u> as well, pales in comparison to that of Malone. In this case, as in <u>Slate</u>, the <u>Vanderlinde</u> standard applies and the record is "devoid of any facts that could possibly constitute compelling extenuating circumstances." <u>Slate</u>, 457 Md. at 650, 180 A.3d at 158.

For all of the reasons discussed herein, we disbar Malone. The disbarment will be effective immediately.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EDWARD ALLEN MALONE.**